Freddie M. SINGLETON et al.,
Plaintiffs,

v.

ANSON COUNTY BOARD OF EDUCATION, a public body corporate,
Defendant.

Civ. A. No. 2259.

United States District Court
W. D. North Carolina,
Charlotte Division.

March 21, 1968.

J. LeVonne Chambers, Charlotte, N. C., Conrad O. Pearson, Durham, N. C., J. H. Rennick, Salisbury, N. C., Jack Greenberg, James M. Nabrit, III, New York City, for plaintiffs.

H. P. Taylor, Jr., Taylor, McLendon & Jones, A. Paul Kitchin, Wadesboro, N. C., for defendant.

## MEMORANDUM OF DECISION

WOODROW WILSON JONES, District Judge.

This is a civil action instituted by the plaintiffs on July 3, 1967, against the defendant, Anson County Board of Education, praying that the Court preliminarily and permanently enjoin the defendant:

"1.  To institute a plan effective with the beginning of the 1967–1968 school

year reorganizing the school system, including the closing of inadequate schools and consolidation of schools now maintained to perpetuate segregation, so as to provide for the assignment of all students in all grades pursuant to geographical zones, established without consideration of race and color, the employment and assignment of teachers and school personnel without consideration of race and color and the elimination of race and color in the program and activities of the school system maintained, authorized and sanctioned by the defendant.

2. That the Court enjoin the defendant and others from intimidating or otherwise interfering with or attempting to prevent, discourage, or dissuade the plaintiffs and others of their class to equal educational opportunities without consideration of race or color.

3. That the Court retain jurisdiction of this cause pending complete desegregation of the Anson County School system * * * ", and for additional and other relief as set forth in the Complaint.

On July 3, 1967, the plaintiffs by their counsel filed a Motion for Preliminary Injunction upon the basis of the complaint simultaneously filed in this cause praying "that this cause be advanced on the docket for the purpose of considering plaintiffs' motion for preliminary injunctive relief, and that upon such hearing the defendant be preliminarily enjoined to adopt a plan for desegregation of its school system reorganizing the school system into a unitary nonracial system where students are assigned to nonracial geographical lines, where teachers, principals and school personnel are employed and assigned to and within the various schools without consideration of race, where students, parents and school personnel are permitted to participate in and to take advantage of all school activities, programs and facilities without consideration of race, where students, parents and school personnel are permitted to enjoy and to take advantage of their constitutionally protected rights without intimidations, threats and reprisals and where all other policies and practices of

the defendant are sanctioned, authorized and administered without consideration of race."

On July 3, 1967, the plaintiffs filed a Motion for a Temporary Restraining Order praying that the Court enter a temporary restraining order, "restraining the defendant from refusing to allow the plaintiffs and others of their class in grades 8, 9 and 10 to attend a school in defendant's school system other than the racially segregated and patently inadequate all-Negro School, * * * "

The Court advanced the Motion for Temporary Restraining Order on the calendar and heard arguments on August 21, 1967. After arguments by counsel and upon a conference with the Court, it was agreed that said matter should be continued until September 5, 1967. The matter was again calendared for hearing on September 5, 1967, and heard upon oral arguments with the parties being given the privilege of filing additional affidavits and briefs.

### FINDINGS OF FACTS

1. That the Complaint filed in this cause by the plaintiffs was duly filed on July 3, 1967, and Summons served on the defendant on July 6, 1967. That the Motions for Preliminary Injunction and Temporary Restraining Order were filed simultaneously with the Complaint. That on July 31, 1967, plaintiffs' attorney served upon defendant's attorney written Interrogatories which were answered by the defendant's attorney on August 14, 1967. That the defendant filed its Answer to the Complaint on August 14, 1967. That the Court advanced the Motion for Temporary Restraining Order on the calendar and heard oral arguments in the matter on August 21, 1967, at which time it was decided that no order should be entered in the matter until September 5, 1967. That the matter was heard again on September 5, 1967 on oral arguments and the parties given an opportunity to file additional affidavits and briefs.

2. That during the school year 1966–67 and apparently for many years prior

thereto, the schools of Anson County were operated under three separate administrative units and by three separate Boards of Education and that some form of "freedom of choice" plan was adopted and used at least during the 1966 school year. This resulted in partial integration of the 7 of the 14 schools operated by all of said administrative units.

3. That by an act of the General Assembly of North Carolina effective July 1, 1967, Laws 1967, c. 261, all of the public schools in Anson County were placed in one administrative unit entitled the "Anson County School Administrative Unit" and are now under the jurisdiction, administration and operation of the Anson County Board of Education. By said legislative act the Board consists of seven (7) members who were named in said act and who were to take office July 1, 1967. Apparently this action stemmed partially from suggestions made by some official of the United States Department of Health, Education and Welfare. That July 1, 1967 was on Saturday and that the seven Board members named in the act actually took the oath of office and began their duties on July 3, 1967, which was the day this action was instituted.

4. That after the consolidation of the schools in Anson County the present Board of Education placed into effect for the school year 1967–68 a new plan, which had apparently been under consideration for some several months, wherein all elementary students in the County were given the right to choose the school which he or she would attend during said year. This included grades one through eight. That all high school students consisting of grades from nine through twelve, were assigned by the Board on the following basis:

a) All students in the 11th and 12th grades were assigned to one consolidated senior high school, namely, Bowman High School, which is a new building not previously used. This school is apparently totally integrated with approximately 565 Negro students and 386 white students, as well as an integrated faculty. It is admitted by both plaintiffs and the defendant that this assignment is proper and is not based on race.

b) That the students in the 9th and 10th grades were assigned by the Board of Education. The plaintiffs contend that these assignments were made on the basis of race and cite the statistical information filed by the Board in answer to Interrogatories submitted by the plaintiffs. The School Board in answer to the Interrogatories assert: "The Anson County Board of Education proposes to give to all elementary pupils in Anson County the right to choose the school which they will attend for the 1967–68 school year, and it proposes to assign all high school students for the year 1967–68 without regard to race." The question of the assignment of the 9th and 10th grade students is the real issue in this law suit and it is seriously disputed by the parties.

5. It appears from the pleadings in this cause that neither the plaintiffs nor any persons in the class whom they represent applied to the defendant for any relief relating to their assignment and enrollment in any school prior to the institution of this action.

6. That at the hearing on August 21, 1967, the question was submitted to the Court upon the pleadings, affidavits, and answers to Interrogatories filed in this cause.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter under Title 28, U.S.C. 1343, and 42 U.S.C. 1981–1986.

2. "The extraordinary character of the injunctive remedy and the danger that its use in improper cases may result in serious loss or inconvenience to an innocent party require that the power to issue it should not be lightly indulged in, but should be exercised sparingly and cautiously, only after thoughtful deliberation and with a full conviction on the

part of the court of its urgent necessity. In other words, the relief should be awarded only in clear cases, reasonably free from doubt, and, when necessary, to prevent great and irreparable injury. The court should therefore be guided by the fact that the burden of proof rests upon the complainant to establish the material allegations entitling him to relief." 28 American Jurisprudence, Injunctions, Section 24, Page 217.

"Injunctive relief, whether prohibitory or mandatory, is granted or withheld in the exercise of a sound judicial discretion and in conformity with settled equitable principles and considerations. The principles upon which the mandatory and prohibitory injunctions are granted do not materially differ, although the courts are perhaps more reluctant to interpose the mandatory writ, for it is not regarded with judicial favor and is used only with caution and in cases of great necessity. When the court is thus asked to undue something that has been done, it must, for obvious reasons, act in a careful and conservative manner and grant the relief only in situations which so clearly call for it as to make its refusal work a real and serious hardship and injustice; otherwise, it may inflict on the defendant the very irreparable injury which it is alleged he has done or is about to do against the plaintiff." 28 American Jurisprudence, Injunctions, Section 20, Page 213.

The injunctive remedy has been used often by the Federal courts in school cases to implement the Supreme Court decision of Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, but in most instances the courts have been slow to issue temporary restraining orders of a mandatory nature without plenary or full evidentiary hearings.

3. The case of Brown v. Board of Education, supra, and many decisions of the United States Supreme Court since that time clearly indicate that the segregation of children in public schools of this country solely on the basis of race amounts to a deprivation of equal protec-

tion of the laws guaranteed by the 14th Amendment to the Federal Constitution. In the recent case of Rogers v. Paul, 382 U.S. 198, 86 S.Ct. 358, 15 L.Ed.2d 265, the Supreme Court indicated that delays in desegregation of public schools are no longer tolerable. The question of whether or not the Anson County School Board has assigned students to schools based solely upon race will be determined upon a full evidentiary hearing on this matter.

4. In the instant case the plaintiffs are asking this court to issue a restraining order without plenary or evidentiary hearing to restrain the defendant Board of Education from refusing to allow the plaintiffs and others of their class in grades 8, 9 and 10 to attend a school other than that to which they have been assigned. It is now clear that the students in the 8th grade are attending schools of their choice, so the motion really involves only the 9th and 10th grades. The plaintiffs contend that these students have been assigned on the basis of race, but the defendant School Board denies the allegation. The evidence is not clear from the record as to how these students were assigned, nor how many of them desire to transfer to other schools. It appears from the statistical information furnished by the defendant that there are 683 Negro students in the County in the 9th and 10th grades. There is no evidence before this court as to what effect a transfer of these students would have upon the administrative procedures, or school pupil capacity of the County School system at this late date. All of these matters can be determined only upon a full hearing.

5. The record seems to indicate that during the 1966–67 school year there was in effect in Anson County a "Freedom of Choice" plan and that as a result of said plan some of the schools in said County were integrated. It is not clear when this plan was inaugurated. The record further indicates that there has been a consolidation of the administrative units in the County and that the defendant Board of Education is now responsible for the operation of the entire

school system. It appears further that the defendant Board of Education instituted a new system for the school year 1967–68, commencing August 28, 1967, which provides a plan of "Freedom of Choice" for all elementary school students, and the assignment of all senior high school students, consisting of the 11th and 12th grades, to one consolidated senior high school. This has resulted in the total integration of Bowman High School with 565 Negro students, 386 white students, and an integrated faculty. It therefore appears to the court that a substantial and good faith effort is being made by the defendant Board to comply with the law of the land. All of these matters can be determined upon a further hearing in this case and upon the trial of the issues.

■ 6. In view of the issues of facts which still must be determined in this matter, the Court is of the opinion that plaintiffs' motion for a temporary restraining order should be denied, and that the trial of the action on the merits be advanced and consolidated with the hearing on plaintiffs' application for a preliminary injunction. That said cause should be calendared for trial as early as practicable, keeping in mind other cases of a similar nature which might have priority.

### INTERIM ORDER

This cause coming on for hearing before the undersigned, United States District Judge, and being heard, and it appearing to the Court that the plaintiffs, Negro school children in Anson County, North Carolina, instituted this class action on July 3, 1967, pursuant to 42 U.S.C.A. Section 1983, on their own behalf and on behalf of other Negro children similarly situated, to desegregate the Anson County school system. The Complaint alleged in substance that the Anson County Board of Education was operating a racially segregated school system and in so doing was denying the plaintiffs and members of their class equal protection of the law. The Complaint prayed for injunctive relief and

was accompanied by motions for a temporary restraining order and a preliminary injunction.

A hearing on the motions for a temporary restraining order and a preliminary injunction was held on August 21, 1967 and again on September 5, 1967 on plaintiffs' claim that Negro students in the ninth and tenth grades should be granted immediate transfer rights to the predominantly white Anson Junior High School. In an order dated September 11, 1967, this Court denied plaintiffs' request for relief finding that the facts before the Court were inconclusive as to whether the students had been assigned upon a racial basis. Plaintiffs appealed the order to the United States Court of Appeals for the Fourth Circuit. The Court of Appeals affirmed, remanding the case for an early hearing upon the merits.

On November 29, 1967, upon the Attorney General's certification that the case was one of public importance, the United States moved for leave to intervene in the action and to file a Complaint in intervention. Upon hearing of this motion, the Court determined that the United States of America was a proper party and, under existing law, was entitled to intervene as a party-plaintiff.

The Court having considered the pleadings, interrogatories and answers thereto, depositions, stipulations and exhibits, all of which by stipulation of the parties constitute the record of the case for the purpose of this order, the Court finds:

1. The Anson County school system, which was officially organized on July 1, 1967, consists of the former Anson County, Morven City, and Wadesboro City school administrative units.

2. The school system has approximately 6,500 students of whom approximately 3,800 are Negro and 2,700 are white. The system has approximately 293 teachers of whom approximately 138 are white and 155 are Negro.

3. At the present time the school system operates 15 schools, 8 of which are

attended and staffed predominantly by white students and teachers and 6 of which are attended exclusively by Negroes and staffed predominantly by Negro teachers. One school, Bowman High School, is serving all students of both races in the county in grades 11 and 12, having been opened for the first time for the 1967–68 school year. Plaintiffs have made allegations and offered evidence concerning racial class assignments, discriminatory practices relating to school activities, inadequate faculty desegregation, teaching assignments and other matters concerning the operation of Bowman High School. In light of the provision of the order pertaining to the operation of the high school grades for the 1968–69 school year, as contained herein, the Court makes no findings in this regard.

4. Beginning in 1965, pursuant to requirements of the Civil Rights Act of 1964 and regulations thereunder, the then three school units adopted freedom of choice plans. Approximately 55 Negro students transferred to formerly all-white schools under these plans for the 1965–66 school year. The three school systems assigned students for the 1966–67 school year pursuant to a joint freedom of choice plan and 152 Negro students chose to attend predominantly white schools for the 1966–67 school year. For the 1967–68 school year the School Board allowed freedom of choice for students in grades 1 through 8 and 51 Negro students chose to attend desegregated schools in these grades. The Board assigned all students in grades 11 and 12 to the newly opened Bowman High School and assigned all white and 33 Negro students in grades 9 and 10 to Anson High School; all other Negro 9th and 10th graders (646) were assigned to several all-Negro schools.

5. A total of 0 teachers were assigned to schools of the opposite race in the three school units during the 1965–1966 school year; 4 teachers were so assigned for the 1966–67 school year. For the 1967–68 school year, 36 white and 11 Negro teachers have been assigned to Bowman High School; in addition, 5 teachers have been assigned to other schools where their race is in the minority for the 1967–68 school year.

6. The bus transportation system as originally instituted under compulsory segregated assignment is still maintained by the present school board; overlapping bus routes serve students attending Negro and predominantly white schools.

7. Some buildings in the school system, now and historically attended by Negro students, are inferior to buildings at schools attended by white students.

8. Since the desegregation process began in 1965–66, some Negro families who have attempted to exercise the right to obtain a desegregated education for their children by choosing to have them attend formerly all-white schools have been subjected to acts of violence, including bombings and shootings. These various incidents have been reported in the two local newspapers and in other news media. These families believe they have been subjected to this violence because of choosing to send their children to formerly white schools. Other Negro parents and students in Anson County have learned of these acts of violence and believe they occurred because the Negro families chose to have their children attend formerly white schools. As a result of these acts of violence, some Negro students have withdrawn from or refused to attend formerly white schools and have returned to all-Negro schools or have withdrawn entirely from the Anson County school system.

Upon these findings the Court concludes that the defendant should be required to take further steps to eliminate the racially identifiable schools and practices within the school system and to provide equal educational facilities for all students.

IT IS, THEREFORE, ORDERED:

1. For the 1968–69 school year grades 9 through 12 shall be totally desegregated and all students in these grades shall be assigned to schools on a geographic or

other unitary basis. Students in grades 1 through 8 shall be required to exercise a choice of school.

2. The freedom of choice herein required of students in grades 1 through 8 shall be conducted during the month of April, 1968. Students shall be allowed thirty days, following the receipt of the choice form, in which to indicate their choice of schools. The choice forms and notice shall conform to those specified by the Department of Health, Education and Welfare and the regulations issued pursuant to Title 6 of the Civil Rights Act of 1964 and shall, moreover, contain notification to the effect that each school in the system shall have substantial faculty desegregation for the 1968–69 school year.

Should overcrowding result at any school as a result of the exercise of choice, students, both Negro and white, shall be assigned to the school and schools nearest their residence.

On or before June 15, 1968, the defendant shall submit a report to the Court, copies to opposing counsel, tabulating the choices exercised by students, by school, grade (1–8), and race, and the assignments to be made in any instance where the Board proposes not to honor such choices. If the Court determines, on the basis of such report, that the proposed assignments will result in insubstantial desegregation in grades 1 through 8, the Court may order that additional steps be taken to achieve substantial desegregation in these grades for the 1968–69 school year.

3. For the 1968–69 school year the School Board shall take all appropriate steps to eliminate overlapping bus routes resulting from previous compulsory racial assignment of students or perpetuating the racial identifiability of the transportation system.

4. Athletics, all extra-curricular activities and all other services, facilities, activities and programs affecting students which are conducted or sponsored by or affiliated with the schools of the system will be operated on a desegregated basis. Students attending school for the first time on a desegregated basis will not be subject to any disqualification or waiting period for participation in activities and programs, including athletics.

■ 5. Within their authority, school officials shall be responsible for the protection of persons exercising rights under or otherwise affected by this order. They shall, without delay, take appropriate steps with regard to any student, parent, teacher or staff member who interferes with the successful operation of this order. Such interference shall include harassment, intimidation, threats, hostile action, and similar behavior. The Board, including each member thereof, shall not publish or cause to be published the names or addresses of pupils assigned to any school, nor the names or addresses of their parents. If officials of the school system are not able to provide sufficient protection, they shall seek whatever assistance is necessary from the appropriate local, state or federal officials.

■ 6. Race, color, or national origin shall not be a factor in hiring, assigning, reassigning, promotion, demotion, or dismissal of teachers and other professional staff members, including student teachers, except that race may be taken into account for the purpose of assigning and reassigning teachers and other professional staff members to eliminate past racial patterns. Defendant shall take immediate, affirmative steps to accomplish substantial faculty desegregation in the system and in each school therein. On or before April 1, 1968, the defendant shall meet individually or in small groups with all faculty members of the school system and encourage the transfer of faculty members so as to desegregate the faculties in each school. The defendant shall advise all present and future faculty members that the Board operates a desegregated school system; that all teachers are subject to assignment to any school therein in the best interest of the school system; and that it is the intention of the Board to as-

sign approximately equal numbers of Negro and white faculty members to each school in the system for the 1968–69 school year to the extent that this can be done on a voluntary basis. If the efforts made by the defendant to encourage assignments of teachers on a voluntary basis does not result in significant numbers of volunteers to cross racial lines, the defendant shall assign a sufficient number of Negro and white teachers to each school in the school system for the 1968–69 school year to accomplish substantial faculty desegregation. On or before April 15, 1968, the defendant shall submit a report to the Court, with copies being served upon opposing counsel, setting forth the results of its efforts to encourage voluntary faculty desegregation and setting forth the projected faculty assignments for the 1968–69 school year by race and school.

Teachers and other professional staff may not be dismissed, demoted, or passed over for retention, promotion or rehiring on the ground of race, color or national origin. In any instance where one or more teachers or other staff members are to be displaced as a result of desegregation, no staff vacancy in the school system may be filled through recruitment from outside the system unless the school officials can show that no displaced staff member is qualified to fill the vacancy. If, as a result of desegregation, there is to be a reduction in the total staff of the school system, the qualification of all staff members in the system must be evaluated in selecting the staff member to be released.

7. The School Board will insure that a substantially equal program of instruction exists in each school serving the same grades as other schools within the administrative unit. Such factors as pupil-teacher, pupil-classroom ratios, library volumes, facilities and teaching materials will be substantially the same. Disbursements of funds will be substantially equal on a per-child basis, except where it is necessary to expend funds to overcome existing or developing disparities or to offer needed remedial programs.

If for any reason it is not feasible to improve sufficiently any school or school facility formerly maintained for Negro students where such improvement would be otherwise required by this paragraph, such school or school facility shall be closed as soon as practicable. Pending complete desegregation of the school system, the defendant shall, by October 15 of each school year, report to the Clerk of Court, with copies being served upon opposing counsel, the number of students and teachers, by race and grade, the pupil-teacher ratios, pupil-classroom ratios, and pupil expenditures at each school, both as to the operating and as to capital improvements costs, and shall outline the steps to be taken and the time within which such steps shall be accomplished in equalizing any unequal facilities.

The defendant, to the extent consistent with the proper operation of the school system as a whole, shall locate any new school and plan the expansion of any existing school or school facility with the objective of eradicating the vestiges of the dual system and of eliminating the effects of segregation.

8. The defendant shall, in addition to the reports elsewhere prescribed herein, serve upon opposing counsel and file with the Clerk of Court on or before the 15th day of November 1968, a plan providing for the complete desegregation of the Anson County school system on the basis of geographic attendance areas, consolidation of schools or grades, or on some other basis, so that no school or grade shall actually serve students of one race only. Such plan shall include the Board's proposals for complete desegregation of facilities, the school transportation system, and all other school-related activities. Any objections to the plan shall be promptly filed and the matter shall be submitted to the Court for its early consideration.

9. The Court retains jurisdiction of this cause. The Court will specifically entertain appropriate motions for the revision of this Order or of the plans for the desegregation of the Anson County

School System in light of principles enunciated in the decisions of the Supreme Court of the United States or of the United States Court of Appeals for the Fourth Circuit.

10. The defendant shall pay the cost of this action as taxed by the Clerk.